USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/19/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GORDON GAMM, et al., Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

- against -

SANDERSON FARMS, INC., et al.,

Defendants.

16 Cv. 8420 (RMB)

**ORDER**

## I. Background

On June 15, 2017, Gordon Gamm ("Lead Plaintiff") and Don Pritchard ("Plaintiff") filed a second amended class action complaint pursuant to the federal securities laws against Sanderson Farms, Inc. ("Sanderson Farms"), Joe F. Sanderson, Jr., D. Michael Dockrell, and Lampkin Butts (collectively, "Defendants").[1] See Second Amended Class Action Complaint, dated June 15, 2017 (hereafter, "Complaint").

According to the Complaint, Sanderson Farms is "an integrated poultry processing company" and the individual defendants are officers of Sanderson Farms. Id. ¶¶ 2, 25-27. Plaintiffs sue individually, and "on behalf of a class consisting of all persons other than

[1] Lead Plaintiff filed the original complaint on October 28, 2016 and a first amended complaint on March 30, 2017. See Complaint, dated Oct. 28, 2016 ("Original Complaint"); Amended Complaint, dated Mar. 30, 2017 ("First Amended Complaint"). At a conference on May 18, 2017, Lead Plaintiff was given the opportunity to file another amended complaint to address legal deficiencies of the First Amended Complaint raised by Defendants' proposed motion to dismiss (as set forth in Defendants' letter, dated May 25, 2017). See Hr'g Tr., dated May 18, 2017, at 5-6 (Q: "So if you find out what his [i.e. Defendants'] bases are [for dismissal], then you should amend and that would be that . . . . But that would be the last amendment. Do you understand what I am saying?" A: "I understand, your Honor."). Plaintiffs availed themselves of the opportunity to amend again by filing the second amended class action complaint on June 15, 2017. See Second Amended Class Action Complaint, dated June 15, 2017.

Defendants who purchased or otherwise acquired Sanderson Farms securities" between December 17, 2013 and November 17, 2016 ("Class Period"). Id. ¶ 1. Plaintiffs assert claims under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, as well as under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). See Complaint ¶¶ 166-82.

Plaintiffs' core contention is that Defendants engaged in two unlawful antitrust conspiracies which they endeavored to keep secret and failed to disclose. Plaintiffs allege, on information and belief, that before and during the Class Period, Defendants and fellow poultry producers, "including (but not limited to) major players like Tyson Foods, Inc. ('Tyson'), Pilgrim's Pride Corporation ('Pilgrim's Pride'), and Perdue Farms, Inc. ('Perdue')," conspired unlawfully to "coordinat[e] a mass reduction of the broiler chicken supply" and also conspired unlawfully to increase "the price of broiler chicken reflected on an industry index known as the Georgia Dock."[2] Id. ¶¶ 3, 40. Plaintiffs allege that because Defendants failed publicly to disclose these unlawful conspiracies, many of their public statements (and omissions) were false and misleading. See id. ¶¶ 6, 18, 86, 90-91, 94-95, 98-99, 104-05, 110-11, 116-17, 120-21, 126-27, 130-31, 134-35, 138, 155, 163, 165, 168-70. According to Plaintiffs,

> Defendants consistently and falsely represented that their industry was "highly competitive" and [] they engaged in "significant competition" with their industry peers. [] Defendants also misleadingly reported significant revenue from poultry sales, touted rising prices and the record highs of the Georgia Dock index, without disclosing that those prices and related financial results stemmed from their anticompetitive conduct.

---

[2] According to the Complaint, "broilers" are raised for meat consumption and "constitute approximately 98% of all chicken meat sold in the United States." Complaint ¶¶ 30, 32.

The Georgia Dock was an industry index that "[wa]s compiled by the Georgia Department of Agriculture ("GDA") and [wa]s used by the industry as a benchmark to set broiler prices." Id. ¶ 5. "The GDA suspended the Georgia Dock index permanently in December 2016." Id. ¶ 68.

Id. ¶ 86.

On June 29, 2017, Defendants filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") arguing, among other things, that Plaintiffs have failed to satisfy the heightened pleading standard under Rule 9(b) of the FRCP and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss, dated June 29, 2017 ("Defs. Mem."), at 7. According to Defendants, **(1)** "Plaintiffs do not allege with the requisite particularity any actions by Sanderson Farms or its officers indicating that Sanderson Farms participated in any conspiracy." Defs. Mem. at 1. Defendants also argue that "the PSLRA requires that an allegation based on information and belief 'state *with particularity* all facts on which that belief is formed.'" Id. at 9 (quoting 15 U.S.C. § 78u-4(b)(1)); and **(2)** "Plaintiffs cannot have relied on Defendants' supposed failure to disclose anticompetitive conduct because the allegations of the [anti-competitive] conduct were already public" when Plaintiffs purchased their shares and were "therefore already incorporated into the price they paid for their stock." Id. at 25.[3]

On August 15, 2017, Plaintiffs filed an opposition to Defendants' motion to dismiss contending, among other things, that: **(1)** Defendants are "mistaken" that an "underlying antitrust conspiracy must [] be pled with particularity." Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, dated Aug. 1, 2017 ("Pls. Opp'n") at 10. Rather, when a plaintiff's securities fraud claim is predicated on the nondisclosure of illegal antitrust conduct, the complaint need only contain "some articulation of how that conduct violated the law." Id. at 11; and **(2)** "Lead

[3] Defendants also argue that Plaintiffs fail to plead "scienter" because they do not state with particularity facts giving rise to a strong inference that Defendants acted with the required (unlawful) state of mind. Defs. Mem. at 22.

Plaintiff here purchased [stock] during the Class Period and ***before*** the truth was fully revealed. Defendants' attacks on reliance are therefore unavailing."

On August 31, 2017, Defendants filed a reply. Defs.' Rep. Mem. of Law in Supp. of Their Mot. to Dismiss, dated Aug. 31, 2017 ("Defs. Rep.").

**For the reasons set forth below, Defendants' motion to dismiss [#46] is granted.**[4]

## II. Legal Standard

"Securities fraud claims are subject to heightened pleading requirements that the plaintiff must meet to survive a motion to dismiss." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). "Any fraud must be pled with particularity; but the rule is applied assiduously to securities fraud." Lentell v. Merrill Lynch, 396 F.3d 161, 168 (2d Cir. 2005) (citation omitted).

Where the "[p]laintiffs' underlying allegation [in a Rule 10b-5 case is] that [a defendant] participated in an antitrust conspiracy," the "[p]laintiffs must plead the facts of the alleged conspiracy with particularity." In re Tyson Foods, Inc. Sec. Litig., 2017 WL 3185856, at *9-*10 (W.D. Ark. July 26, 2017); see also In re Banco Bradesco S.A. Sec. Litig., 2017 WL 4381407, at *20 (S.D.N.Y. Sept. 29, 2017).

"Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." U.S. ex rel. Kester v. Novartis Pharm. Corp., 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (internal quotation marks omitted). Where allegations are made on information and belief, "plaintiffs must 'plead with particularity sufficient facts to support those beliefs.'" In re Sierra Wireless, Inc. Sec. Litig., 482 F. Supp. 2d 365, 372 (S.D.N.Y. 2007) (quoting Novak v. Kasaks,

[4] Any arguments raised by the parties but not specifically addressed herein have been considered by the Court and rejected.

216 F.3d 300, 313-14 (2d Cir. 2000)).

"Where a plaintiff fails to allege any primary violation, he cannot establish control person liability under Section 20(a)." Wilbush v. Ambac Fin. Grp., Inc., 2017 WL 4125364, at *6 (S.D.N.Y. Sept. 5, 2017).

## III. Analysis

This case is strikingly similar to In re Tyson Foods, Inc. Securities Litigation ("Tyson"), 2017 WL 3185856 (W.D. Ark. July 26, 2017). As here, the plaintiffs in Tyson brought securities fraud claims on behalf of a proposed class of investors against a poultry producer and its officers. See id. at *14. The claims were based upon the same broiler reduction conspiracy alleged here and upon the Georgia Dock conspiracy also alleged here. See id. The Tyson court dismissed the supply reduction conspiracy claims because the plaintiffs "failed to plead Tyson's participation in the antitrust conspiracy with particularity." Pls. Opp'n at 12 n.5. The Georgia Dock conspiracy claims were dismissed because the court "did not find scienter as to that conspiracy." Id. at 24 n.14.[5]

### (1) Plaintiffs Have Failed to Plead Both Alleged Conspiracies with Particularity

Defendants argue persuasively that Plaintiffs have failed to plead the two alleged conspiracies with particularity. Defs. Rep. at 2. Plaintiffs counter unpersuasively that the underlying conspiracies need not be pled with particularity. Pls. Opp'n at 10.

The Court sides with Defendants as to particularity and finds that Plaintiffs fail to support their allegation of a chicken supply reduction conspiracy with particularized facts, as follows:

**(a)** Plaintiffs allege in Complaint paragraph 3, upon information and belief, that there was

[5] The Tyson court did not analyze whether the Georgia Dock conspiracy was alleged with particularity. See 2017 WL 3185856, at *14.

"a mass reduction of the broiler chicken supply." Complaint ¶ 3. But Plaintiffs fail to include pertinent facts such as how much broiler production decreased at any point in time. Plaintiffs also fail to explain when (dates) Sanderson Farms and identified co-conspirators cut production; how Sanderson Farms and identified co-conspirators went about cutting production at specific times; and whether and when Sanderson Farms and identified co-conspirators revealed that they were cutting broiler production, closing plants, or terminating employees. Plaintiffs do not provide the reasons, if any, which Sanderson Farms and their co-conspirators relied upon for cutting broiler production, closing plants, or terminating employees. See U.S. ex rel. Mooney v. Americare, Inc., 2013 WL 1346022, at *4 (E.D.N.Y. Apr. 3, 2013) (where the court ruled that "the Third Amended Complaint fails to plead with particularity the 'who, what, when, where and how' of the fraudulent referral scheme" because it "does not provide patient names, claim numbers, dates of services, claim amounts, or reimbursement amounts, if any. The complaint alleges violations of the Anti-Kickback Statute but does not identify the specific payers or recipients of these kickbacks. Moreover, many of the alleged participants in the scheme are not defendants in this case, making it even more important that the complaint connect the alleged wrongful conduct to the named defendants.").

**(b)** Plaintiffs allege in Complaint paragraph 38, upon information and belief, that Sanderson Farms and its co-conspirators destroyed broiler breeder hens. Complaint ¶ 38. This allegation is not supported by particularized facts such as when and how the broiler breeder hens were destroyed; how many broiler breeder hens there were before and after a particular point in time; which of Sanderson Farms' alleged co-conspirators also destroyed broiler breeder hens; whether and when Sanderson Farms and identified co-conspirators revealed that they would destroy broiler breeder hens; and what reasons, if any, Sanderson Farms and these co-

conspirators gave for destroying broiler breeder hens. See Mooney, 2013 WL 1346022, at *4.

**(c)** Plaintiffs allege in Complaint paragraph 38, upon information and belief, that Sanderson Farms and its co-conspirators "export[ed] excess broiler breeder flocks to Mexico." Complaint ¶ 38. Plaintiffs fail to support this allegation with particularized facts such as when and how excess broiler breeder flocks were exported to Mexico; which co-conspirators exported excess broiler breeder flocks to Mexico; whether and when Sanderson Farms and identified co-conspirators revealed that they were exporting excess broiler breeder flocks to Mexico; and what reasons, if any, Sanderson Farms and its alleged co-conspirators gave for exporting excess broiler breeder flocks to Mexico. See Mooney, 2013 WL 1346022, at *4.

**(d)** Plaintiffs allege in Complaint paragraph 39, upon information and belief, that Sanderson Farms and its co-conspirators exported "broiler hatching eggs from the U.S. starting in 2013." Complaint ¶ 39. Plaintiffs do not provide particularized facts such as how long (i.e. what time period) Sanderson Farms and its co-conspirators continued to export the eggs; where the eggs were exported to; which of Sanderson Farms' co-conspirators exported the eggs; whether and when Sanderson Farms or any of the co-conspirators revealed that they were exporting eggs; and what reasons, if any, Sanderson Farms and these co-conspirators gave for exporting eggs. See Mooney, 2013 WL 1346022, at *4; and

**(e)** Plaintiffs allege in Complaint paragraph 41, upon information and belief, that "Defendants and their industry peers coordinated to [destroy] eggs." Id. ¶ 41. Plaintiffs do not provide particularized facts such as when and how Sanderson Farms and its co-conspirators destroyed eggs; how many eggs the co-conspirators destroyed; whether and when Sanderson Farms or any of its co-conspirators revealed that they were destroying eggs; and what reasons, if any, Sanderson Farms and co-conspirators gave for destroying eggs. See Mooney, 2013 WL

1346022, at *4.

Plaintiffs also fail to support their allegation of a conspiracy to manipulate the Georgia Dock with particularized facts, as follows:

**(a)** Plaintiffs allege in Complaint paragraph 63, upon information and belief, that Sanderson Farms and its co-conspirators "submitt[ed] artificially high and identical or very nearly identical broiler prices to the GDA." Complaint ¶ 63. But Plaintiffs do not provide particularized facts such as price quotes which were given to the GDA on specific dates; what officers or employees of Sanderson Farms and its co-conspirators provided these (false) price quotes; and why and how the price quotes were false. See Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) ("This Court has read Rule 9(b) to require that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (internal quotation marks omitted)); and

**(b)** Plaintiffs allege in Complaint paragraph 64, upon information and belief, that "[t]o ensure their control over the Georgia Dock price, Defendants and their competitors convinced the GDA to convene a Georgia Dock Advisory Committee [now defunct] composed of senior executives from several of Sanderson Farm's co-conspirators to advise the GDA on the Georgia Dock price." Complaint ¶ 64. Plaintiffs do not provide particularized facts such as when and how Defendants and their co-conspirators convinced the Georgia Dock to convene the committee; how the committee exerted control over the Georgia Dock price(s); who sat on this committee; and how those who sat on the committee were connected to Defendants and identified co-

conspirators.[6] See Mooney, 2013 WL 1346022, at *4.

**(2) Reliance Involves Questions of Fact**

Defendants argue that "Plaintiffs cannot have relied on Defendants' supposed failure to disclose anticompetitive conduct because the allegations of the conduct were already public" when Plaintiffs purchased their shares and were "therefore already incorporated into the price they paid for their stock." Defs. Mem. at 25. Plaintiffs counter that "Lead Plaintiff here purchased during the Class Period and ***before*** the truth was fully revealed. Defendants' attacks on reliance are therefore unavailing." Pls. Opp'n at 24.

Assuming arguendo that Plaintiffs had adequately pled the underlying conspiracies (which they have not), the Court would likely hold that reliance involves a question of fact and is not easily resolved upon a motion to dismiss. See Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 (2d Cir. 2000).[7]

In this case, there is a question of fact whether, at the time Plaintiffs purchased their shares, there was public information that Defendants and their alleged co-conspirators had

---

[6] As noted at p.5 supra, the Tyson court dismissed the claims based upon the Georgia Dock conspiracy for failure adequately to plead scienter. If this Court were to analyze the issue of scienter, the Court would likely reach the same conclusion for essentially the same reasons provided by the Tyson court. The Tyson court reasoned that "[t]he less centralized nature of the alleged scheme, coupled with the Complaint's deficiencies in tying the individual Defendants to the scheme, make this case a far cry from those in which courts have inferred scienter in part on the basis of a scheme's nature and a defendant's high-level position." Tyson, 2017 WL 3185856, at *26.

[7] Under the fraud on the market doctrine, "whenever the investor buys or sells stock at the market price, his reliance on any public material misrepresentations may be presumed for purposes of a Rule 10b-5 action." Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2408 (2014) (internal quotation marks and ellipsis omitted). Defendants invoke the "truth on the market corollary." Ganino, 228 F.3d at 167 (internal quotation marks omitted). That is, "a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market." Id. "The truth-on-the-market defense is intensely fact-specific" and "rarely an appropriate basis for dismissing a § 10(b) complaint." Id.

participated in the two alleged conspiracies. Plaintiff purchased Sanderson Farms stock on September 29, 2016, and Lead Plaintiff purchased Sanderson Farms stock on October 3, 2016. See Plaintiffs' Certifications, Decl. of Jeremy A. Lieberman, dated Dec. 27, 2016, Ex. B. On January 18, 2016, i.e. before Plaintiffs purchased their shares, the Wall Street Journal published an article which discussed allegations that the Georgia Dock was being manipulated.[8] Spencer Jakab, Are Food Companies Playing Chicken With Prices?, Wall Street Journal, Jan. 18, 2016, http://www.wsj.com/articles/are-food-companies-playing-chicken-with-prices-1453142354 ("Amid an oversupplied poultry market, some of the largest processors in the country such as Tyson Foods, Pilgrim's Pride and Sanderson Farms have found a saving grace. A key benchmark for pricing much of the meat sold at supermarkets in the U.S. has held up remarkably well. Too well, some critics surmise. Fueling their doubt: The source of that benchmark is the companies themselves."). And, on September 6, 2016, CNBC published an article about a lawsuit (Maplevale Farms, Inc. v. Koch Foods, Inc., 1:16-cv-08637 (N.D. Ill.)) in which it was alleged that Sanderson Farms, Tyson, Pilgrim's Pride, and others had "conspired to unlawfully fix, raise, maintain and stabilize the price of broiler chickens by coordinating and limiting their production capacity." Katie Little, Lawsuit Alleges There's Been a Chicken Price Conspiracy, CNBC, Sept. 6, 2016, https://www.cnbc.com/2016/09/06/lawsuit-alleges-theres-been-a-chicken-price-conspiracy.html.

**(3) The § 20(a) Claims**

Plaintiffs control person claims against the individual defendants under § 20(a) of the

---

[8] "On a motion to dismiss, a court may take judicial notice of the publication of a newspaper article without converting the motion into one for summary judgment, provided that consideration is limited to the fact of publication and not the truth of the article's content." In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig., 757 F. Supp. 2d 260, 302 (S.D.N.Y. 2010).

Exchange Act, see Complaint ¶¶ 177-82, are "necessarily predicated on a primary violation of securities law." Rombach, 355 F.3d at 177-78. Because Plaintiffs' primary claims under § 10(b) and Rule 10b-5 are inadequately pled, these secondary claims must also be dismissed. See id. at 178 ("Because we have already determined that the district court properly dismissed the primary securities claims against the individual defendants, these secondary claims must also be dismissed."); Wilbush, 2017 WL 4125364, at *18 ("Because the Court holds that Plaintiff has not alleged a primary violation of the Securities Exchange Act or Rule 10b-5, he cannot establish control person liability." (citation and internal quotation marks omitted)).

## IV. Conclusion & Order

For the reasons stated above, Defendants' motion to dismiss [#46] is granted with prejudice. The Clerk of Court is respectfully directed to close this case.

Dated: New York, New York
January 19, 2018

Richard M. Berman

**RICHARD M. BERMAN**
**U.S.D.J.**